Thank you, Your Honor. Good morning. May it please the Court, Colin McDonald for the appellants. And, Your Honor, I would request to reserve two minutes for rebuttal. Your Honor, a straightforward application of the Supreme Court's recent Bivens precedence reveals that the District Court's order should be reversed in this case. Marquez's claims require an extension to any prior Bivens context and multiple special factors prohibit this Court from doing so. Let me ask you this, if I may. Is this a deliberate indifference case? Yes, Your Honor. Was Carlson a deliberate indifference case? Carlson was specifically a medical needs case. No, I ask you a different question. Was Carlson a deliberate indifference case? Yes, it was, Your Honor. So we've got two deliberate indifference cases. That's right, Your Honor. So why is this an extension from Carlson? The reason, Your Honor, there are several answers to that question, one of which I would begin with the Abbasi case where the Supreme Court said that the confinement conditions question that was at issue in Abbasi bore little resemblance to the circumstances in Carlson. The circumstances in Carlson involved a medical deliberate indifference to the clear medical needs of an inmate in the aftermath of an asthma attack. No, no, I understand. I know the facts of the case. I've got a quotation that strikes me that none of the parties have cited in the I'm having trouble pronouncing the name of it, but the Malesko case. The Malesko case, the Court talks about we're not going to expand. We're not going to do anything in a new context. But I'm on page 72 of the U.S. Reports, and the Court writes, if a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a Bivens claim against the individual officer. So this is in Malesko where they say no extension to a new context, yet at the same time they say a prisoner alleging unconstitutional conditions in a BOP facility has a Bivens action. So what are we supposed to do with that? Well, Your Honor, what we're supposed to do is to look at the Court's recent opinions in Abassi, Hernandez, and Egbert where Abassi set forth a new paradigm for analyzing. No, Malesko sets it forward. Malesko itself says we are not expanding beyond these cases. Correct. Malesko was referring to the historical Bivens cases that had been recognized by the Court, but where we are now is a different land than in 2001 when Malesko was decided. Well, no, wait a minute. Let me just read you from Malesko. The Court writes, since Carlson, we have consistently refused to extend Bivens liability to any new context. So we know this in Malesko. So Abassi says it again, but they say it in Malesko, and in the same opinion, the Court writes unconstitutional deprivation, prisoner gets to bring a suit under Bivens. So what am I supposed to do with that? Again, what Your Honor should do with that is to look at the paradigm that was set forth in Abassi. I repeat, Malesko sets it forward. Abassi repeats it. Malesko, though, doesn't analyze any particular set of facts to determine whether they would permit a Bivens claim in a particular context. I understand Malesko made a sort of broad statement, but didn't engage in the— Well, it was actually a very precise statement, but you may disagree with it. And if I'm reading the handwriting on the wall, the Supreme Court, when it gets around to it, may also disagree with it. But it's a very clean statement. Well, what the Supreme Court has said most recently in Egbert is that courts are— Well, counsel, I know you want to get back to Egbert, and I understand that that's the case. I guess to Judge Fletcher's question, is there a difference that in Carlson we were dealing with an Eighth Amendment issue versus what we're dealing in this case, which is a Fifth Amendment issue, that the claims arise out of different areas? Is that a difference, or is it not? And if it's not, then tell me why. That is a difference. Abassi itself— for us not to consider it consistent with what the court has directed in Carlson. Abassi says specifically that when you're dealing with a new constitutional amendment, that that is a new context at step one of the Abassi analysis. And so, yes, that is by itself sufficient to move us to the special factors analysis. If I may interrupt on that point. In Egbert, the Supreme Court also said if it's a new right, it's a new context. On the other hand, it also used language of if there's a meaningful difference. And is there a meaningful difference here between the Fifth Amendment and Eighth Amendment? Yes, there is, Your Honor, and it's kind of a twofold answer. The Fifth Amendment standard is different from the Eighth Amendment standard, number one. But also, number two, the Supreme Court has made clear that we're no longer operating under the Ancien regime, where the Supreme Court and courts would be willing to extend a Bivens remedy. And so where things like the amendment that we're dealing with, that alone, where the watchword is caution, that that alone—we're dealing with an entirely different constitutional amendment—that that alone is enough to say we're in a new context. Thus, we must apply the special factors analysis. I guess, as Judge Fletcher said, maybe the writing's on the wall from the Supreme Court. But on the other hand, the Fifth Amendment here in this context is lesser than the Eighth. And is there really a meaningful difference? I mean, sure, it's a new right, and maybe it is a different context. That's not the most satisfying answer just logically. I understand that, and I think Your Honor is right in a sense. But even small differences are meaningful. But the Fifth Amendment protection for a pretrial detainee, which is our case, is a greater protection than the Eighth Amendment protection, which is cruel and unusual punishment. So why is it a new context when we have someone who has greater protection because he's a pretrial detainee? The reason, Your Honor, is based directly on the Supreme Court instruction in Abbasi and in Egbert, where in Abbasi the court had that exact question, the Eighth Amendment versus the Fifth Amendment, and whether that presented a new context. And the court said that given a new constitutional amendment is in play, that that can amount to a meaningful difference. And so it comes back to the current status of extensions of Bivens relief, where the court has said that only in the most unusual circumstances can the court afford a Bivens remedy. Well, going to the special factors analysis, one of the points that was raised by Marquez was that here there's this administrative process that exists, but it did not – should the existence of that process be sufficient for us to say the special factors indicate that we should go another way, or the fact that the person was not able to participate in those, or making that process essentially meaningless? So, yes, the existence of the BOP's administrative remedy program itself is a special factor that precludes a Bivens remedy in this circumstance. And there's factual and legal reasons as to why. As a matter of fact – But if he's not even able to use it, just the mere existence of it is sufficient? Is that what you're saying? Yes. And the reason is – the question is not whether before the injury happens, whether there's a remedy that can prevent the injury. An example of that is Egbert, where in the Egbert versus Boulay case, the Supreme Court said in the end that the fact that the Border Patrol had a grievance program that Mr. Boulay could engage with, that that was a special factor that precluded relief. Well, in the moment before Agent Egbert picked up Mr. Boulay and threw him across the room, Mr. Boulay did not have the opportunity to file a grievance complaint with the Border Patrol. And the reason is – the reason why this matters is the alternative remedial scheme does not need to prevent the injury from happening in the first place. It must merely be available to inmates, to individuals, to remedy a particular harm. Does it make a difference as we compare Egbert to this case? It wasn't across the room. It was outside. It was next to the car. He pushes Boulay aside. Boulay alleges some twinge, I think. Whereas here, what we have is a severe beating that almost killed the man. Is that a difference that should make any difference if we're talking about special factors and remedy? Your Honor, no, because the Supreme Court has said that we are not to weigh the circumstances of any particular case in determining whether to fashion a Bivens remedy. Instead, the court is to look more broadly as to whether judicial intrusion into a particular field has the potential to be harmful or has the potential to be – The special factors analysis comes up in an interesting way in this case. The district court didn't actually reach it in the sense of saying there are or are not. What she said was we've got a complaint, and there are a lot of things that we don't yet know. For example, we don't yet know whether there are regulations that would control the behavior of the screening officer in terms of whether or not to grant him sort of protective custody. We don't know because the complaint just says soon thereafter. We don't know whether he was attacked within two days or attacked within a much longer period where some sort of a grievance might have been able to go through. Are you saying that there's no possible set of circumstances in which the remedy is inadequate? Because that's what – the foundation for the district judge opinion is there is a possible set of circumstances, and are you saying there's no possible set of circumstances? Yes, given the Supreme Court's guidance in Egbert. In other words, I want to make sure that I understand what you're saying because it's a pretty severe statement. You're saying that if there's no way that he can get any protection, that is it happens too soon, there's no way that he can get any compensation afterwards. In other words, there is zero effective remedy for him. Nonetheless, that satisfies the special conditions or the special factors. Well, first factually – That's a yes or no question. Yes. The answer is yes, that the Supreme Court has said that if there is an alternative remedial scheme – But I just said the remedial scheme does not provide a remedy. Then in that instance, the court has said that the courts are not to determine whether a remedy is sufficient or adequate, that if Congress or the executive has set forth an alternative remedial scheme, that that is a special factor that precludes Bivens – Even if the remedial scheme, in fact, provides no remedy. So in that sense, there's not a remedial scheme that has any consequence for this particular person in this particular circumstance. Well, there can be. The Border Patrol's administrative remedy program requires investigation and follow-up into any grievance that's filed. And that could include things resulting in suspension or even removal entirely for the individual officer if an officer is found to have acted inappropriately. That is the program specifically that the court in Egbert cited. The court in Egbert cites Malesko to say that Malesko referred to the BOP's administrative remedy program as a reason why not to extend Bivens in that particular case. And this court in Hoffman, faced with this exact question, withdrew a published opinion to find simply in an unpublished disposition that given the Border Patrol's alternative remedial program, that there could be no Bivens. Yeah, and this is obviously – I mean, you're doing your job, but I have to say that what this really means is the government's arguing that Bivens is a dead letter. Well, no, Your Honor. It's a dead man walking. I mean, there's nothing left of Bivens. If I might respond to that, I do see my time is up. Two responses to that, Your Honor. It isn't a dead letter in the sense that the Supreme Court has said that the three cases that came previously, that those are alive and well. If there's a case that tracks Carlson, a deliberate indifference to medical needs of an inmate, that that – Bivens is alive and well in that context. The second answer is that to a large extent, the Supreme Court has said yes, that the door is nearly shut with respect to Bivens because we're in a new age where we no longer will imply remedies, a judicial cause of action. So that means I would much prefer to be beat up in a state prison than in a federal prison because I've got a good remedy in a state prison, but in a federal prison, I don't. That's the consequence. Well, and again, that's a question for Congress to decide. Even though in both circumstances, what I'm alleging is a constitutional violation. And again, Your Honor, that is a question for Congress to decide in weighing. Is Congress better suited – And again, in a sense, I'm not arguing with you. I'm almost arguing with the Supreme Court. I don't understand why, if it's a constitutional violation, Congress can refuse to provide it to a federal prisoner when it is provided under federal law, under the federal constitution, to a state prisoner. I understand we've got a statute. I understand we've got 1983. But the whole function of Bivens, like Bowling v. Sharp with respect to equal protection, was to provide a federal remedy when there was not a federal statute. So, I mean, where we're headed is something that strikes me as just totally incoherent. But it's not your fault. I mean, this is where the Supreme Court seems to be taking us. Understood, Your Honor. Unless there are any further questions, I reserve – You don't have any more time, but we'll give you two minutes for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Dee Dangaran, they, them pronouns for the appellee, Steve Marquez. I urge the Court to decide this case on Bivens Step 1. This prosaic failure-to-protect case fits neatly in the Court's narrow set of sanctioned cases. In the vast universe of constitutional claims, we are in the tiny world of conditions of confinement claims carved out by Carlson v. Green, not in a new context. If, however, this Court reaches Step 2, the history of the Prison Litigation Reform Act indicates Congress's intent to allow Bivens claims in this context. Thus, we ask the Court to affirm. At the outset, applying Supreme Court precedent in Carlson and Farmer, the Third Circuit held in Bistreon and Shorter that the plaintiff – that a federal officer's failure to protect a plaintiff from a risk of serious injury from prisoner-on-prisoner violence is not a new context for Bivens claims. This Court should align with the Third Circuit in Soho. Why is it not a new context? Similar question that I asked. Why is it not a new context or that it's materially different when we're dealing with one rights that arrives under the Eighth Amendment versus the Fifth Amendment? Why isn't that sufficient for us to say, well, the Supreme Court has told us that we need to back off here? Thank you, Your Honor. The Third Circuit's answer to this question in Bistreon guides my answer to it, so I will quote that. The Court held that the Fifth Amendment, as opposed to a prisoner conviction, prisoners' claim under the Eighth Amendment, is not a meaningful difference, in part for the reasons Judge Fletcher was discussing. The Eighth Amendment subsumes the Fifth Amendment. It is a lesser standard under the Fifth Amendment. Here, the pretrial detainee's rights and the injury experience are the same as if they were under the Eighth Amendment. And to discuss the Abassi distinction that counsel was raising, in Abassi, we had a very different context, not just because of the amendment difference, but because they were held by the executive, not criminally charged or convicted. These were immigrants who were suspected of terrorism. So the Fifth Amendment difference there is much more of a meaningful difference in a different set of circumstances than we have with comparing Carlson and Farmer's Eighth Amendment usage to the Fifth Amendment here. And so that's the first Abassi factor that was discussed, and I think one of the more significant ones. But walking through the other Abassi factors also shows why there is no new context here. The rank of the officers, this was a line correction officer at the facility level who made a specific individual determination of the risk to Mr. Marquez's health or safety and then disregarded that risk. And that is what I would ask the court to view the Carlson standard as holding. Is there a meaningful factual difference? Carlson involved a prison. Here involves a temporary detention center, MCC, which Mr. McNaughton probably walks by every day. It's not particularly that big. They probably don't have the same resources that a prison does, limited units. Isn't that a meaningful difference, a reason why it's a new context that courts should be reluctant to create a new Bivens remedy here? Your Honor, that is not in the list of Abassi factors. Of course, that list is not exhaustive. I would say that it really is going to jail versus prison, and I don't think that that would be a meaningful difference, especially because, as I said, the Fifth Amendment right and the Eighth Amendment right go hand in hand. And so regardless of the— and we don't have those facts here on the facility, and that's not what the question is about. If I may interrupt, I guess here is, you know, the claim here is that Mr. Marquez should have been placed in a protective unit. Perhaps in a prison there are more spaces available to put him there, and at the MCC, a temporary detention center, again, it's not a particularly—it's a tall building, but it's not a particularly big building. They may not have those as many units, protective units. So doesn't that lead us to be a bit more cautious here? It's arguably a new context.  This antecedent question exists at the level of the constitutional right, and I think the right exists whether it is a prison or a jail. There are some facilities across the country where a pretrial detainee would be held in the same facility as the prisoner, so it wouldn't make sense as a way to parse the difference. And I think the factors are actually helpful here because the constitutional right issue is the same, as I just argued, and also the extent of judicial guidance, no matter what the facility looked like, would be the same. Well, wouldn't the answer at this stage be that's to be discovered? I mean, all we have is a complaint. Yes. I mean, I think Judge Lee and I have both been in the facility, but that doesn't mean I know whether they, in fact, can accommodate that need of segregated protective custody. I mean, that's for discovery. Yes, Your Honor, it could be for discovery. I don't think it's part of the Bivens antecedent question, especially because the action that we're talking about here is not about, you know, where exactly Mr. Marquez was placed, but the disregard of the risk to protective custody altogether. The answer was no. We don't have whether that answer was no because there's no space. We know that they disregarded the risk posed to the health or safety of our client. And I think to go to that underlying principle here, farmer is a subcontext of Carlson. The deliberate and different standard applied to Eighth Amendment claims involving medical care is the same as that applied to conditions of confinement more broadly. The district court cited Farmer, which quoted Wilson v. Sider at the record at 28, which said that medical care is a condition of confinement like protections afforded prisoners. Carlson addressed the Bivens cause of action, even though the issue was not presented below. Similarly, we argue that Farmer necessarily determined the Bivens cause of action because it reached the merits of deliberate and different. If I might interrupt, can we really rely on Farmer? Because the Supreme Court and Egbert and Abbasi, they repeatedly say we've only allowed Bivens in these three cases, and they never mentioned Farmer. So it seems that it's a bit of a leap to say the Supreme Court, you know, considered Farmer to be a Bivens case in that context. Yes, the Third Circuit addressed this in Bistrione and Shorter, and we agree with the Third Circuit. Farmer, by vacating a grant of summary judgment and citing Carlson in stating what claim was being discussed and reaching the merits of deliberate indifference, necessarily answered the Bivens question. And so to your question, though, because it is a part of this Carlson umbrella, the cite to Carlson shows that it was not an extension and it's not a fourth context, but really is just a subcontext of what Carlson already held, and that is conditions of confinement cases under the Eighth Amendment. That's the right that Farmer addressed. The Third Circuit case was before Egbert, right? Egbert came after it? Yes, Your Honor, both of the Third Circuit cases. However, Egbert did not at all change the Step 1 inquiry. Egbert really arguably changed the second step, but it did not affect the first step. And so the Abbasi factors gave us more structure to the first step, and as Judge Fletcher pointed out, Malesko in other cases had already tried to create more stringent requirements on the first step, but Egbert did not actually affect the first step whatsoever. Can you get to the second step? Because I think I agree with you that it did change how we look at the second step. The fact that this process exists, as the government argues, that is sufficient, that we should not go beyond that, that we, the Court, is not in a better position than Congress to establish what procedures or what the executive thinks are appropriate under these circumstances. Thank you, Your Honor. Again, we ask the Court to decide on the first step, but if it must reach the second step. We know that it's a steep hill to climb, but we have our hiking boots on. If this Court decides this is a new context, Mr. Marquez's claim should still proceed to trial because Congress explicitly left Bibin's claims open when it passed the PLRA, clearly indicating its intent for the Administrative Remedy Program in the BOP context specifically to not displace Bibin's claims. So there's a difference here between the Egbert ARP and BOP's ARP. This position is supported by the PLRA's legislative history that we cited in our answering brief at page 32. There, Congress explicitly discussed McCarthy v. Madigan, a 1992 Supreme Court case, and overruled Madigan's holding that claims for monetary damages brought under Bibin's did not need to exhaust through the ARP, not the viability of Bibin's claims altogether. Moreover, Congress passed the PLRA one year after Farmer was decided, thus it was aware that it was creating this exhaustion requirement for failure to protect claims as well. The entire scheme would make no sense if Congress decided that the Administrative Remedy Program altogether displaced Bibin's claims. So as the Court held in Porter v. Nussel, cited at our answering brief at 29, the ARP is an exhaustion requirement for Bibin's claims rather than a substitution for those claims. A panel of this Court, though in an unpublished disposition, discussed this reasoning approvingly in Reed, and we urge the Court to follow it. But the Court need not wade into these murky waters because this is a garden variety deliberate indifference claim, which is not a new context. Farmer decided this type of claim is within the bounds of Carlson, and the Third Circuit agreed twice in Bistrion and Shorter. The Court has never overruled Farmer, nor has Farmer said that it assumed the issue without deciding it, and so until the Court does so, this Court is bound to follow Farmer as binding precedent here. I would also argue that this Court's decision in Hoffman, though it was withdrawn, while it's non-binding, I think there's a difference there that the Court might consider, which is that the prison corrections officers there acted with more intent by doing more active things like labeling the plaintiff there as a snitch and offering prisoners awards. And so there was more of an intentional creation of that risk. So this Court has not actually reached this question yet, and it can now decide to align this case with the Third Circuit, which we think would be a much stronger reading of the precedent that applies here. I know my time has expired. If I could just conclude, unless there are further questions, I'm happy to answer them. This is a step one case. This Court should affirm and decide the case does not arise in a new context. Alternatively, this Court should affirm, because Supreme Court precedent and the PLRA indicate that the administrative remedy program is not an available alternative remedy and no other special factors counsel hesitation here. At the very least, this Court should vacate and remand to allow the District Court the opportunity to apply the post-Egbert step two in the first instance. Thank you, Your Honors. Great. Thank you. Mr. Donnelly, you'll have two minutes. Thank you, Your Honors. Farmer is not a Bivens context. This is a direct quote from Egbert. Courts are to ask whether the current case is meaningfully different from the three cases in which the Court has implied a damages action. There are only three Bivens cases under the Supreme Court law. The Court cannot start with Farmer and then do its new context analysis with Farmer, but Mr. Marquez needs that because that bridge gets him a little bit closer to what the facts of this case are. Without Farmer, then we go back to Carlson, which there are meaningful distinctions between Carlson and this case. Second, Judge Lee, you asked is there reason to be cautious. There's great reason to be cautious in this case. This is not merely a line-level officer with a garden variety claim. This actually reaches the policy level of BOP, and what I mean by that... No, it does not. You do not know this yet. The District Court was remanding it so we could determine that. Well, respectfully, Your Honor, the reason I say that is this, that if there is a Bivens claim that's allowed to proceed past the motion-to-dismiss phase, then this would essentially bind the hands of correctional officers to require placement in special housing whenever an inmate says, I'm charged with a certain offense. That is just wrong. It's clear from what the District Court wrote that she says if it is a policy, we don't get to it under Bivens. If, however, there is a regulation that under these circumstances would require the officer to provide protective custody and the officer ignored it, that's a different question. So what you're saying is just totally inconsistent with what the District Court held. Well, the District Court ultimately said that I can't decide the special factors analysis at the outset. But the Supreme Court... And then she said, and one of the reasons I can't decide it is I don't know whether there's a regulation that sets this as a policy. If the regulation sets as a policy that on appropriate requests segregated housing is to be required, that's one thing. On the other hand, if there's no such thing, I'm not going to set policy for BOP. But if they have set it and we have a rogue officer, then we've got a Bivens claim. That's what she said. That is what she said, and we would say that that's contrary to the rubric that the Supreme Court has set out. Well, that may be right, but you said something quite different. But my point, I think, Your Honor, and I take your point, my point was that this does have the great ability to touch on separation of powers issues that the Supreme Court has said is most important in this context because this goes directly to Congress's need to create causes of action and the executive's power to preside over issues of prisoner... Your time is... I mean, I'm taking it well over time, for which I apologize, but I need... I'd like one last question, and that is, I think it's consistent with what we know from the complaint. I mean, we take that for the moment as true. That Officer Rodriguez is hostile. Officer Rodriguez says, what a great guy, and says, well, here's a piece of paper for when you get attacked. What happens if this case goes to discovery and we learn? And this is one of the questions that the district judge said, I'd like to know the answer to this. What happens if we learn in discovery that Rodriguez informed prisoners that Marquez was a sex offender with, then, the predictable result? Is there still no cause of action when we have the BOP officer informing the prisoners with the expectation that he will be beat up and almost killed? Is there still no cause of action? That's right, Your Honor, and that's... I'm afraid that is your answer consistently, but that's a pretty bad answer. I mean, not from a legal... I'm not talking about a bad lawyering answer, but it's a horrible answer from the standpoint of what our prisoners and what our constitutional rights ought to be. And I would just finish with this to say, Your Honor, that the Hoffman case is actually pretty precisely that analysis. Very bad facts, worse than here. And this court, in an unpublished decision, after Egbert decided that the administrative remedy program was sufficient and the Fourth Circuit in the Bolger case, where Whitey Bolger was killed after 14 hours of being placed in general population, they found that in that case there would be no Bivens remedy, and that's post-Egbert, the only case post-Egbert in this context more recently than the Third Circuit case in Bistrian. And unless there are further questions, we will submit. Thank you to both counsel for the very helpful arguments, and we are adjourned for the day. All rise. This court for this session stands adjourned.
judges: FLETCHER, LEE, MENDOZA